**C.O. LAW, APC**
Clark Ovruchesky, Esq. (301844)
co@colawcalifornia.com
2404 Broadway, Suite 150
San Diego, California 92102
Telephone: (619) 356-8960

*Attorney for Plaintiff,*
Umberto Mignozzetti

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UMBERTO MIGNOZZETTI,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA COAST CREDIT UNION, TRANS UNION LLC, EXPERIAN INFORMATION SOLUTIONS, INC., AND EQUIFAX INFORMATION SERVICES LLC,<br><br>Defendants. | Case No.: '25CV2656 WQHMMP<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**<br><br>I. **FAIR CREDIT REPORTING ACT;**<br><br>II. **CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT; AND**<br><br>III. **CALIFORNIA REES-LEVERING MOTOR VEHICLE SALES AND FINANCE ACT**<br><br>**JURY TRIAL DEMANDED** |

CASE NO.:                                                                            *Mignozzetti v. California Coast Credit Union et al.*
**COMPLAINT**

# INTRODUCTION

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. The California legislature has determined that the banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts and that unfair or deceptive collection practices undermine the public confidence that is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. The Legislature has further determined that there is a need to ensure that debt collectors exercise this responsibility with fairness, honesty and due regard for the debtor's rights and that debt collectors must be prohibited from engaging in unfair or deceptive acts or practices.

3. The California legislature also enacted the Rees-Levering Motor Vehicle Sales and Finance Act to provide comprehensive protection for motor vehicle buyers, including strict limitations on when and how vehicles may be repossessed and specific notice requirements that must be followed.

*C.O. LAW, APC*
*2404 BROADWAY, SUITE 150*
*SAN DIEGO, CA 92102*

4. UMBERTO MIGNOZZETTI ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of CALIFORNIA COAST CREDIT UNION ("CCCU", "FURNISHER-DEFENDANT", or "DEFENDANTS"), TRANS UNION LLC. ("TRANSUNION," or "CREDIT BUREAUS," or "DEFENDANTS"), EXPERIAN INFORMATION SOLUTIONS, INC. ("EXPERIAN," "CREDIT BUREAUS," or "DEFENDANTS"), and EQUIFAX INFORMATION SERVICES LLC ("EQUIFAX", "CREDIT BUREAUS", or "DEFENDANTS"); with regard to attempts by CCCU to unlawfully and abusively collect a unlawful debts from Plaintiff, inclusive of inaccurate credit reporting to, and by, the Credit Bureaus and this conduct caused Plaintiff damages.

5. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to a plaintiff, or to a plaintiff's counsel, which Plaintiff alleges on personal knowledge.

6. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

7. Unless otherwise stated, all the conduct engaged in by Defendant took place in California.

8. Any violations by each Defendant were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

9. Unless otherwise indicated, the use of a Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant's named.

///

///

## JURISDICTION AND VENUE

10. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 1681p; and, 28 U.S.C. § 1367 for supplemental state claims.

11. This action arises out of Defendants' violations of (i) Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. ("FCRA"); (ii) the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785.1, et seq. ("CCCRAA"); and (iii) the California Civil Code §§ 2983.2 and 2983.3 ("Rees-Levering Motor Vehicle Sales and Finance Act").

12. The Court has personal jurisdiction over Defendants as Defendants conduct business within the State of California and have purposefully availed themselves of the laws and markets of the State of California and this district.

13. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in San Diego County; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) Defendants conducted business within this judicial district at all times relevant.

## PARTIES

14. Plaintiff a natural person who resides in the County of San Diego, in the State of California. In addition, Plaintiff is a "consumer" as that term is defined by is defined by 15 U.S.C. § 1681a(c); and, Cal. Civ. Code § 1785.3(b).

15. CCCU is a credit union licensed and regularly doing business in the State of California.

16. CCCU is a partnership, corporation, association, or other entity, and is therefore "person" as that term is defined in 15 U.S.C. §1681a(b), and Cal. Civ. Code § 1785.3(j).

///
///
///

17. CCCU is also a "furnisher" of credit information as that term is described in 15 U.S.C. §1681s-2 et seq., that regularly and in the ordinary course of business furnish information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.

18. Defendant EXPERIAN is a corporation, whose primary corporate address is in the City of Costa Mesa, in the State of California, and is authorized to do business in the State of California.

19. Defendant EQUIFAX is a corporation whose primary corporate address is in the City of Atlanta, in the State of Georgia, and is authorized to do business in the State of California.

20. Defendant TRANSUNION is a corporation whose primary corporate address is in the City of Chicago, in the State of Illinois, and is authorized to do business in the State of California.

21. The Credit Bureaus are each a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f); and, a "consumer credit reporting agency" as defined by Cal. Civ. Code § 1785.3(d).

22. The Credit Bureaus are each a credit reporting agency licensed to do business in California and at all times relevant hereto was regularly doing business in the State of California.

23. The Credit Bureaus are each regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

24. Defendants are each a "person" as that term is defined by Cal. Civ. Code § 1785.3(j).

///

///

25. The causes of action herein also pertain to Plaintiff's "consumer [credit] report" as that term is defined by 15 U.S.C. § 1681a(d)(1) and Cal. Civ. Code § 1785.3(c), in that inaccurate credit information was furnished by CCCU to "consumer reporting agencies," as that term is defined by Cal. Civ. Code § 1785.3(d), regarding specific transactions and/or experiences pertaining to Plaintiff and Plaintiff's credit worthiness, credit standing, and credit capacity. Such credit information was used or was expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing Plaintiff's eligibility for, among other things, credit to be used primarily for personal, family, household and employment purposes.

**FACTUAL ALLEGATIONS RE: CCCU ACCOUNT NO. 1209832* OR *0800 (THE "ACCOUNT")**

26. At all times relevant, Plaintiff was a consumer and an individual residing within the State of California.

27. In or about November 2024, Plaintiff opened an auto loan account with CCCU—the Account—for the purchase of a 2024 Toyota Grand Highlander Limited FWD.

28. From the Account's opening on November 21, 2024 through April 2025, Plaintiff timely performed all of his obligations under the contract, making all required monthly payments, never delinquent, and maintaining all required insurance coverage through GEICO.

29. Plaintiff's payment history confirms zero late charges and current status on the account through April 2025, demonstrating full compliance with his contractual payment obligations.

///

///

///

CASE NO.:  5 OF 18  *Mignozzetti v. California Coast Credit Union et al.*
COMPLAINT

30. On April 12, 2025, Plaintiff's wife, Juliana, was driving the 2024 Toyota Grand Highlander when she was involved in a traffic accident in the Santee, California area. The vehicle was impounded by the authorities due to the circumstances of the accident.

31. At the time of the accident and impoundment, Plaintiff remained current on all loan obligations and had not defaulted in the performance of any obligations under the contract.

32. Plaintiff's credit reports confirm that the payment history showed "OK" or current status through April 2025.

33. On April 24, 2025—a mere twelve (12) days after the accident and in the absence of any default in the performance of Plaintiff's obligations under the contract—CCCU wrongfully "repossessed" the vehicle from the impound lot to "avoid the costs of the impound fees."

34. CCCU's wrongful repossession occurred around 10:00 AM on April 24, 2025—the exact same day GEICO was scheduled to inspect the vehicle at 3:00 PM. GEICO's adjuster arrived at the impound lot at the scheduled time only to find the vehicle missing, having been removed by CCCU merely six hours earlier. This interference with the insurance claims process caused approximately a one-month delay in the total loss determination and settlement.

35. By repossessing the vehicle in the absence of default in the performance of Plaintiff's obligations under the contract, CCCU violated California Civil Code § 2983.3(a)(1).

36. On April 29, 2025, CCCU issued a "Notice of Our Plan to Sell Property" pursuant to the Rees-Levering Motor Vehicle Sales and Finance Act.

37. The Notice checked the "No Reinstatement Right" box, purporting to deny Plaintiff his statutory right to reinstate the contract.

38. However, CCCU failed to check any of the six statutory justification boxes set forth in California Civil Code § 2983.3(b)(1)-(6), demonstrating that CCCU could not reasonably determine that any statutory exception applied.

39. This failure to identify any statutory justification while denying reinstatement rights constitutes a facial violation of California Civil Code § 2983.2 and demonstrates CCCU's acknowledgment that no legitimate grounds existed for the repossession.

40. GEICO declared the vehicle a constructive total loss and paid CCCU a settlement of $54,686.36 on May 27, 2025. Additionally, financed product refunds totaling $2,793.29 were applied to the loan balance for cancelled add-on products (such as extended warranty and other financed protection products). GAP insurance separately paid $2,335.79 to cover what should have been the remaining loan deficiency.

41. The term "repossession" is defined by Black's Law Dictionary as "The act or an instance of retaking property; esp., a seller's retaking of goods sold on credit when the buyer has failed to pay for them. — Often shortened to *repo*." REPOSSESSION, Black's Law Dictionary (10th ed. 2014).

42. Again, Plaintiff was never delinquent on the Account or failed to make a timely payment to CCCU. Therefore, it was patently inaccurate and materially misleading for CCCU to report a repossession and delinquencies on Plaintiff's credit reports.

43. Following the repossession, CCCU also froze Plaintiff's online access to the Account, preventing him from monitoring transactions or making payments electronically. This restriction forced Plaintiff to handle all matters in person or over the phone, causing significant inconvenience and time expenditure. The freeze also extended to Plaintiff's separate, current loan account with CCCU, requiring monthly in-person payments despite that account being fully current.

44. CCCU's wrongful repossession was motivated by financial convenience to avoid impound costs rather than any legitimate default under the contract or applicable law.

45. Moreover, GEICO agreed to reimburse CCCU the full $1,558 in impound fees, which Plaintiff was insured for. This demonstrates that CCCU's stated justification for the repossession—'to avoid the costs' of impound fees—was both premature and unnecessary, as the fees were properly recoverable through insurance coverage that CCCU knew existed.

46. By repossessing the vehicle in the absence of default in the performance of Plaintiff's obligations under the contract, CCCU violated California Civil Code § 2983.3(a)(1).

47. CCCU's wrongful repossession directly caused the inaccurate credit reporting that forms the basis of Plaintiff's FCRA claims, as the subsequent charge-off and repossession entries were predicated on this unlawful taking of the vehicle.

48. Denise Gibbs, Loss Recovery Specialist III at CCCU, acknowledged in communications that Plaintiff had "paid his dues correctly" and referred to this as an "exceptional situation." Ms. Gibbs explicitly stated that the repossession "would not affect [Plaintiff] in any way or mean that [Plaintiff] was in default." She later promised that the charge-off would be removed once the account was paid in full.

49. On May 28, 2025, CCCU sent Plaintiff a letter demanding continued monthly payments of $998.07 under the original loan terms, with the next payment due July 1, 2025. The letter acknowledged receipt of a $54,686.36 total loss settlement from GEICO on May 27, 2025, but claimed a remaining principal balance of $7,654.27, instructing Plaintiff to continue payments as if the loan were ongoing.

50. The letter did not state Plaintiff was delinquent on the loan. Furthermore, CCCU received payments towards the loan of $2,793.29 and $2,335.79 on June 11, 2025, $1,144.24 on June 30, 2025, and $1,398.51 on July 3, 2025 to effectively pay off the entire loan.

51. Contrary to CCCU's own assurances and Plaintiff's timely payment history, CCCU reported false and damaging information to the Credit Bureaus, including a charge-off status, involuntary repossession codes, past due amounts, and a date of first delinquency of June 30, 2025, when no default or delinquency ever occurred.

52. The Account inaccurately reported a charge-off amount of $1,398, a current balance of $1,144, an amount past due of $1,144, and a status of Charge Off / Charged Off Account / Past Due as of Jul 2025 / Repossession, with a date closed of May 1, 2025. These negative credit entries are entirely false and misleading. The vehicle was not repossessed due to any default or delinquency on Plaintiff's part.

53. Through this conduct, CCCU violated Cal. Civ. Code § 1785.25(a) by furnishing information to consumer reporting agencies that CCCU knew or should know was inaccurate.

54. Plaintiff subsequently paid the disputed and inaccurate $1,398 charge-off amount on July 3, 2025 to resolve the Account, yet CCCU failed to honor its commitment to remove the charge-off and other inaccurate information, and the negative and inaccurate information remains on Plaintiff's credit reports.

55. On July 28, 2025, Plaintiff disputed the inaccurate information regarding the Account with the Credit Bureaus via certified mail, providing detailed explanations and supporting documentation, including GEICO total loss settlement documents, GAP insurance payment documentation, vehicle impound and repossession documentation, email communications with CCCU

employees Denise Gibbs and Elizabeth Barron, the original loan contract and vehicle purchase documents, Plaintiff's driver's license, and a recent utility bill. Plaintiff requested immediate deletion of the disputed inaccurate balance, charge-off, and repossession information and an update to reflect the correct status of the Account as current, never delinquent, with a zero ($0) balance and amount past due.

56. Plaintiff received notification shortly thereafter that Defendants received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6) and were providing the results of the reinvestigation.

57. Upon information and belief, the Credit Bureaus forwarded Plaintiff's disputes to CCCU as required under the FCRA.

58. CCCU was required to conduct a reasonable reinvestigation into the Account pursuant to 15 U.S.C. § 1681s-2(b)(1)(A).

59. Despite these obligations, Plaintiff learned in or about September 2025 that Defendants each verified the inaccurate information, and continued to report the Account history as adverse by continuing to report the inaccurate charge-off, repossession, past due, and delinquency notations on Plaintiff's credit reports.

60. The Credit Bureaus did not provide notice to Plaintiff that Plaintiff's dispute was "frivolous or irrelevant," pursuant to 15 U.S.C. § 1681i(a)(3).

61. Defendants' investigations were not reasonable.

62. More specifically, Defendants should have discovered from their records, including the Dispute Letter and supporting documents, that the information being reported was inaccurate and materially misleading. Plaintiff provided detailed information explaining why the Account was never delinquent and should have had no balance owed. Plaintiff contends that it was unreasonable for Defendants to not contact Plaintiff for further information if needed.

63. The Credit Bureaus could have easily requested CCCU to provide Plaintiff's payment records, which would have reflected Plaintiff was never late on the Account.
64. Therefore, the Credit Bureaus also failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.S.C. §1681i.
65. The Credit Bureaus also violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files they published and maintained concerning Plaintiff.
66. Similarly, CCCU could have simply reviewed their payment records, which would have reflected Plaintiff was never late on the Account. Instead, CCCU conducted a superficial "investigation" and continued their previous inaccurate reporting.
67. Such conduct by the Defendants was willful and reckless.
68. Accordingly, CCCU failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.S.C. § 1681s-2(b)(1)(A) by failing to remove all of the disputed and incorrect information.
69. CCCU failed to review all relevant information provided by Plaintiff in the dispute to the Credit Bureaus, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B).
70. Due to CCCU's failure to reasonably investigate, CCCU further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681s-2(b)(1)(C).
71. By inaccurately reporting account information after notice and confirmation of its errors, CCCU failed to take appropriate measures as required by 15 U.S.C. § 1681s-2(b)(1)(D); and, (E).

72. Through this conduct, CCCU violated Cal. Civ. Code § 1785.25(a) by furnishing information to consumer reporting agencies that CCCU knew or should know was inaccurate.

73. Plaintiff's continued efforts to correct Defendants' erroneous and negative reporting by communicating Plaintiff's dispute with the Defendants were fruitless.

74. Defendants' continued inaccurate and negative reporting of the inaccurate information to Plaintiff's credit report in light of Defendants' knowledge of the actual error was willful.

75. Defendants' failure to correct the inaccuracies on Plaintiff's credit reports was intentional and in reckless disregard of Defendants' duty to refrain from reporting inaccurate information.

76. Accordingly, Defendants willfully and negligently failed to comply with Defendants' respective duties to reasonably investigate Plaintiff's dispute.

77. As a direct result of Defendants' inaccurate reporting and failure to correct the information, Plaintiff has suffered actual damages, including but not limited to: multiple denials of credit applications, including two denials in September 2025 for financing a Tesla vehicle, where the reported delinquency was cited as the primary reason for rejection; the loss of a $7,500 federal EV tax credit that expired on September 30, 2025; harm to Plaintiff's creditworthiness; increased interest rates on any approved credit; and non-economic damages such as emotional distress, frustration, embarrassment, anxiety, and the inconvenience and time spent due to loss of online account access, including for a separate current loan.

78. Defendants' inaccurate and negative reporting damaged Plaintiff's creditworthiness.

# CAUSES OF ACTION CLAIMED BY PLAINTIFF

# COUNT I

# VIOLATION OF THE FAIR CREDIT REPORTING ACT 15 U.S.C. §§ 1681-1681X (FCRA)

# [AGAINST ALL DEFENDANTS]

79. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

80. The foregoing acts and omissions constitute numerous and multiple willful, reckless, or negligent violations of the FCRA including, but not limited to, each and every one of the above-cited provisions of the FCRA, 15 U.S.C. §§ 1681e(b), 1681i, and 1681s-2.

81. CCCU violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation into Plaintiff's disputes, failing to review all relevant information provided by the Credit Bureaus, and continuing to furnish inaccurate information about the Account to the Credit Bureaus.

82. The Credit Bureaus violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files they published and maintained concerning Plaintiff.

83. The Credit Bureaus violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiff's credit file after receiving actual notice of such inaccuracies, failing to conduct lawful reinvestigations, failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file, and relying upon verification from a source it has to know is unreliable.

///

///

84. As a result of each and every violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2) from each Defendant.

## COUNT II
## VIOLATION OF THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT
## CAL. CIV. CODE § 1785.1, ET SEQ.
## [AGAINST ALL DEFENDANTS]

85. Plaintiff realleges and incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein.

86. The foregoing acts and omissions constitute numerous and multiple violations of the CCRAA including, but not limited to, each and every one of the above-cited provisions of the CCRAA, Cal. Civ. Code §§ 1785.14, 1785.15, 1785.16, and 1785.25.

87. CCCU violated Cal. Civ. Code § 1785.25(a) by furnishing information to the Credit Bureaus that it knew or should have known was incomplete or inaccurate.

88. The Credit Bureaus violated Cal. Civ. Code § 1785.14(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information in Plaintiff's consumer credit reports.

89. The Credit Bureaus violated Cal. Civ. Code § 1785.16 by failing to promptly and properly reinvestigate Plaintiff's disputes and failing to delete or correct the inaccurate information.

90. As a result of each and every violation of the CCRAA, Plaintiff is entitled to actual damages as the Court may allow pursuant to Cal. Civ. Code § 1785.31(a)(1); statutory damages pursuant to Cal. Civ. Code § 1785.31(a)(2); and reasonable attorney's fees and costs pursuant to Cal. Civ. Code § 1785.31(e) from each Defendant.

## COUNT III
## VIOLATION OF CALIFORNIA CIVIL CODE § 2983.3 - WRONGFUL REPOSSESSION
## [AGAINST CCCU]

91. Plaintiff realleges and incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein.

92. At all times relevant hereto, the vehicle purchase and financing transaction between Plaintiff and CCCU was governed by California Civil Code § 2983.3 of the Rees-Levering Motor Vehicle Sales and Finance Act.

93. California Civil Code § 2983.3(a)(1) prohibits repossession "in the absence of default in the performance of any of the buyer's obligations under the contract."

94. CCCU repossessed Plaintiff's vehicle on April 24, 2025, despite Plaintiff's full compliance with all contractual obligations and the absence of any default.

95. CCCU's own employees acknowledged that Plaintiff had "paid his dues correctly" and characterized the repossession as being done "to avoid the costs" of impound fees rather than due to any borrower default.

96. CCCU's wrongful repossession violated California Civil Code § 2983.3(a)(1) and directly caused the subsequent false credit reporting.

///

///

///

///

CASE NO.:    15 OF 18    *Mignozzetti v. California Coast Credit Union et al.*
COMPLAINT

# COUNT IV

## VIOLATION OF CALIFORNIA CIVIL CODE § 2983.2 – IMPROPER NOTICE PROCEDURES

### [AGAINST CCCU]

97. Plaintiff realleges and incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein.

98. California Civil Code § 2983.2 requires that creditors provide accurate notice of repossession with proper disclosure of the buyer's rights and the creditor's justifications for any denial of reinstatement rights.

99. CCCU'S April 29, 2025 "Notice of Our Plan to Sell Property" checked the "No Reinstatement Right" box but failed to identify any of the six statutory justifications under § 2983.3(b)(1)-(6) for denying reinstatement rights.

100. This failure constitutes either: (a) CCCU'S acknowledgment that no statutory grounds existed for repossession; or (b) CCCU'S failure to comply with mandatory notice requirements under § 2983.2.

101. Under § 2983.3(e), CCCU bears the burden of proving that any denial of reinstatement rights was made reasonably and in good faith, a burden CCCU cannot meet given its procedural failures and employee admissions.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that judgment be entered against each Defendant for:

- Actual, statutory, treble and punitive damages; attorney's fees and costs.
- An award of actual damages, in an amount to be determined at trial or damages of a maximum of $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), against Defendant for each incident of willful noncompliance of the FCRA;
- An award of statutory damages of $1,000.00, pursuant to Cal. Civ. Code § 1788.30(b) (against Defendant CCCU);

- An award of punitive damages, as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2), against Defendant for each incident of willful noncompliance to the FCRA;
- An award for costs and reasonable attorney's fees, pursuant to 15 U.S.C. §1681n(a)(3), against Defendant for each incident of noncompliance of the FCRA;
- An award of actual damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1681o(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA;
- An award of actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1788.30(a) (against Defendant CCCU);
- An award of costs and litigation and reasonable attorney's fees pursuant 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681o(a)(2) against Defendant for each incident of noncompliance of the FCRA;
- An award of actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1785.31(a)(2)(A), against each named Defendant individually;
- Award of attorneys' fees and costs pursuant to Cal. Civ. Code § 1785.31(a)(1); and, Cal. Civ. Code § 1785.31(d) against each named Defendant individually;
- An award of costs of litigation and reasonable attorney's fees, pursuant to Cal. Civ. Code § 1788.30(c) (against Defendant CCCU);
- An award of punitive damages of $100-$5,000 per willful violation of Cal. Civ. Code § 1785.25(a), pursuant to Cal. Civ. Code § 1785.31(a)(2)(B);
- Punitive damages according to proof as to the claims;
- For equitable and injunctive relief pursuant to Cal. Civ. Code § 1785.31(b);

- Declaratory relief that CCCU'S actions violated California Civil Code §§ 2983.2 and 2983.3;
- Restitution of all amounts wrongfully collected, including the charge-off amount;
- That the Court preliminarily and permanently enjoin Defendants from engaging in the unlawful credit reporting practices stated herein;
- Pre-judgment and post judgment interest at the legal rate; and
- Any and all other relief the Court deems just and proper.

## TRIAL BY JURY

102. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: October 6, 2025                                            Respectfully submitted,

**C.O. LAW, APC**

By: ___/s/ Clark Ovruchesky
CLARK OVRUCHESKY, ESQ.
ATTORNEY FOR PLAINTIFF